[Civ. No. 3626. First Appellate District, Division One.—January 5, 1921.]

A. OTIS BIRCH et al., Copartners, etc., Appellants, v. COUNTY OF ORANGE, Respondent.

[1] DISQUALIFICATION OF JUDGE—COUNSEL FOR OPPOSING LITIGANTS IN PRIOR ACTIONS—BIAS AND PREJUDICE.—A trial judge is not legally disqualified from hearing an action by the members of a copartnership against the county to recover taxes assessed against the plaintiffs' oil lands, and paid under protest, upon the mere showing that one of the plaintiffs was the defendant in certain prior actions brought by the minority stockholders in a corporation, which had formerly owned such oil lands, to recover damages for alleged fraud and deceit by means of which the defendant in said actions procured the purchase of their stock, to which actions demurrers were sustained without leave to amend, and that the judge, who was at the time of such prior actions a practicing attorney, represented certain of the plaintiffs in said actions and verified certain of the complaints therein, there being no single act shown to have been committed, or declaration, statement, or expression shown to have been made by the said judge before, during or since the prior litigation ceased having the slightest tendency to show hostility or even unfriendliness on his part toward the plaintiff, who was the defendant in said actions.

APPEAL from an order of the Superior Court of Orange County denying a motion for change of place of trial. R. Y. Williams, Judge. Affirmed.

The facts are stated in the opinion of the court.

Woodruff & Shoemaker for Appellants.

L. A. West, District Attorney, and W. F. Menton and Alex. P. Nelson, Deputy District Attorneys, for Respondent.

SEAWELL, P. J., *pro tem.*—This is an appeal from an order made by Honorable R. Y. Williams, judge of the superior court of the county of Orange, denying the application of plaintiffs for a change of the place of trial of said action from the superior court of said Orange County to the superior court of the county of Los Angeles.

The application was made on the ground that said judge, before whom the said cause was pending and set for trial, being the same judge who heard and denied said motion, was disqualified to sit or act by reason of the prejudice or bias that he held against plaintiffs, particularly plaintiff A. Otis Birch, and that plaintiffs could not, therefore, have a fair and impartial trial by reason of said bias. (Sec. 170, Code Civ. Proc.)

It was the stipulation of counsel that if the Honorable R. Y. Williams should be proven to be disqualified, then there would have been no judge of said county qualified to sit, inasmuch as the only other judge for said county had deemed himself disqualified.

The main action out of which this proceeding springs was brought by A. Otis Birch and his copartners against the county of Orange to recover from said county the sum of $9,222.85, paid to said county by plaintiffs under protest on account of taxes assessed against said copartnership's oil lands for the year 1917. Said property, consisting of 20.16 acres, was assessed on a valuation basis of $408,975, and plaintiffs seek to have declared void all of said amount in excess of a valuation of $30,240.

The action was commenced on June 3, 1918. On December 28, 1918, defendant answered. The cause had been set for trial for May 5, 1919. On April 30, 1919, five days prior to trial day, plaintiffs filed a notice of their motion for a change of the place of trial, urging as a reason therefor the ground heretofore stated.

In support of said motion A. Otis Birch, manager of said copartnership, filed an affidavit setting out at great length and in minute detail the history of previous litigation in which he was an active litigant and the opposing interests were represented by Honorable R. Y. Williams, then a practicing attorney and a member of the firm of Williams & Rutan, Honorable Oscar A. Trippet (now United States

district judge for the southern district of California), H. C. Head, Esq., and Clyde Bishop, Esq.

The main facts to be gathered from the affidavit of A. Otis Birch by which the prejudice and bias of the trial judge are attempted to be demonstrated are substantially as follows:

Prior to 1911 said oil lands were owned by the Menges Oil Company, a corporation. A majority of the capital stock of said corporation was owned by plaintiffs, of whom A. Otis Birch was the active and dominant head. A group of other persons, thirteen in number, who may be denominated minority stock owners, held the balance of said capital stock. Early in 1911, A. Otis Birch secured options to purchase all the stock of said corporation and later exercised said option and became the owner thereof. Prior to this acquisition the corporation had drilled and completed four oil wells. A fifth well, known as Well No. 5, had been in the process of drilling and development for a period of two years before said A. Otis Birch had secured said option on the stock held by the minority stock owners. Subsequent to securing said option and before he exercised it Well No. 5 began to produce oil and gas in almost fabulous quantities. It is the averment of A. Otis Birch that for several years after its completion it continued to produce in large quantities and "had the reputation of being the most profitable oil well in Orange County or elsewhere in the state of California."

The thirteen minority stockholders, who had contracted their stock for sale under said option, upon subsequently learning of the extraordinary productiveness of said Well No. 5, and within three years thereafter, commenced separate actions to recover damages in the sum of $1,500,000 from said A. Otis Birch on the grounds that he had fraudulently suppressed and withheld from them important facts and information existent within his knowledge at the time he was negotiating said option concerning the wealth of said Well No. 5 in oil and gas, and by false representations and by the employment of methods deceitful induced each of said minority stockholders to dispose of their stock to him at the paltry sum of two dollars per share, when, in fact, said stock was of a value of at least fifty dollars per share.

Prior to the commencement of said actions, thirteen in number, against said Birch, some of said former minority stockholders had employed H. C. Head, Esq.; some had employed Honorable Oscar A. Trippet; some had employed Clyde Bishop, Esq., and others had employed Honorable R. Y. Williams. As the several causes of action must necessarily have been similar in many, if not all, respects, it was agreed by said attorneys that all would join in signing the several complaints and become associated in the prosecution of said actions.

The complaints were filed in April, 1914. In January, 1915, an order was made sustaining the demurrer to a second amended complaint without leave to amend. The litigation was finally disposed of by decision of the supreme court affirming the order of the lower court sustaining said demurrer. (*Thomas* v. *Birch,* 178 Cal. 483, [173 Pac. 1102].)

[1] The affidavit of said A. Otis Birch is the only one offered by plaintiffs herein. It is based almost wholly upon the allegations found in the several complaints charging fraud and deceit. It surely does not go beyond the issues or outside of the proceedings had in said trial and supreme courts. There is no single act shown to have been committed, or declaration, statement, or expression shown to have been made by said Honorable R. Y. Williams before, during, or since the litigation ceased that has the slightest tendency to show hostility or even unfriendliness on his part for the said A. Otis Birch. The allegations of said pleadings, which form the basis and main support of the only affidavit made in behalf of the moving parties, are but the usual and necessary allegations employed in framing a pleading in which fraud is the principal issue. In fact, the allegations are as temperate and the language employed to state fraud is as well chosen as would fittingly become any member of the bar whose broad sense of universal justice and high regard for legal ethics may not be easily prostituted to personal advantage or at all sacrificed to consuming malice.

We have searched the record with some degree of pains and with a view of uncovering some hidden or veiled evidence of personal hostility exhibited in some form or in some manner by the said Honorable R. Y. Williams and

his associates but have failed in the search. It is not to be found in the record.

Bitter complaint is made because certain of the complaints, verified by certain litigants in said former actions, charged A. Otis Birch with a refusal to give certain requested information concerning the development of said oil well to said plaintiffs and that he made certain false, equivocal, and misleading statements to them. Several of such instances, rendered unimportant, however, so far as the issue before this court is concerned because of the direct allegations made in the complaint, were developed upon the taking of a number of depositions at the instance of A. Otis Birch in the said suits. The truth of the matter is, according to the affidavits made by Honorable R. Y. Williams and Attorney Clyde Bishop, the original complaints were dictated and prepared in the law office of said Clyde Bishop by him. The causes of actions being practically identical, the complaints were prepared in blanket form. Certain matters alleged as existing within the knowledge of certain deponents proved upon the taking of said depositions to be incorrect. In other words, matters within the knowledge of one or more did not in each instance prove to be within the knowledge of all. More care might have been exercised in this respect, but in the stress of the practice of the law such a circumstance furnishes a very weak support to sustain specific charges of prejudice and bias. As soon as the inaccuracies were discovered the complaints were immediately amended to correspond with the knowledge of each particular litigant. Other grounds urged in support of plaintiffs' motion are:

That said R. Y. Williams personally verified one of the second amended complaints; that he was through a "mass" of litigation extending over a period of five years; that seven of the complaints were verified by him as a notary public; that he and other attorneys were employed on a contingency fee basis; that meetings of counsel and clients were held at the law offices of Williams & Rutan to hear preliminary reports and make necessary investigations; that said Honorable R. Y. Williams was a leading attorney in the cause; that certain stationery upon which pleadings were prepared bore his name; that he gave to

the plaintiffs in the corporation suits their first information constituting grounds of the action.

The foregoing acts upon which bias and prejudice are predicated are but the ordinary incidents to the preparation of an action for trial. There is not one among the enumerated acts urged for disqualification that should have had a tendency to produce prejudice in a well-balanced mind. The accused did all that every attorney should do to protect his clients' interests and nothing more. An attorney should be active, diligent, zealous to a reasonable degree and generally useful to those who employ him. Said affidavit nowhere contains an averment that the allegations of the complaints filed in the former cases were wantonly or maliciously or even falsely made or that they were not reasonably justified by existing facts.

By no process of reasoning may legal bias be presumed from the facts as presented by the record. It would be contrary to the rules of inferences and abhorrent to the laws of human conduct to conclude upon the showing made that any or all of the attorneys connected with the case became so obsessed by implacable hatred for plaintiff A. Otis Birch as to compass his financial undoing.

Almost a year had intervened from the day the supreme court decision ended all litigation and the trial day of said action. Four years had passed since all activity had ceased in the superior court of Orange County. The causes had long awaited a hearing. Said causes were never before any court except on the presentation of questions of law, and while in numbers there were many, in substance there was but one action and a decision of one was decisive of all. Certain excerpts taken from the brief of plaintiffs filed in the supreme court upon appeal have been severely criticised, but said excerpts contain but the very familiar language usually employed in the presentation of questions of fraud. The counter-affidavits aver that the Honorable R. Y. Williams was not the author of the language complained of, and that the criticised portions of the argument were written by one of his associates.

The issues raised by the pleadings in the respective causes have no point of similarity. Here no question of fraud is involved. Plaintiff seeks by this action to recover the sum of $9,222.85 from the county of Orange

on account of taxes paid to it under protest. The proceeding was doubtless brought under the provisions of section 3819 of the Political Code. The fact that one of the plaintiffs, A. Otis Birch, who was a stockholder in the litigant corporation in the former action, is also a member of the litigant copartnership in the present action and that the land about which controversy was formerly waged is the same land upon which the disputed taxes were levied by the county assessor of Orange County neither shows similarity of situation nor similarity of interests so far as the question may relate to or affect the question of the disqualification of the trial judge.

Notwithstanding the apparent insufficiency of the affidavit offered to sustain a demand for a change of the place of trial, the Honorable R. Y. Williams, H. C. Head, Esq., and Clyde Bishop, Esq., filed counter-affidavits rebutting many of 'the averments of said A. Otis Birch. Nothing material is left untraversed. Said Honorable R. Y. Williams avers that he was not the leading counsel in said former actions but that Honorable Oscar A. Trippet was the counsel to whom all others deferred; that he did not prepare the original complaints in said action but is informed and believes that the same were prepared by Clyde Bishop, Esq.; that the allegations of the original complaints were made and based upon statements of fact made to said Clyde Bishop by the plaintiffs and by persons who would be witnesses; that he did not personally interview more than two witnesses as to what said witnesses would testify relative to the issues; that upon information received by him he wrote but one letter of inquiry to one person to obtain knowledge and information concerning the drilling of Well No. 5. He denies unusual or unwarranted activity on the part of himself or others. He further avers that he believed that plaintiffs had sufficient cause to justify them to institute said action, and that he represented his clients only in conformity to the duty that an attorney owes to his clients, and that he is not now, nor has he ever been, hostile to or prejudiced or biased against said A. Otis Birch or any member of his family or any of the plaintiffs. He further avers that he does not know any of said plaintiffs except said A. Otis Birch; that he can and will give said Birch and all the plaintiffs a

fair and impartial trial on the issues and will weigh the evidence of each by the same rules of evidence fixed by law to be applied to the testimony of any other witness in said action.

Other counter-affidavits corroborative of the foregoing were filed and were sufficient to meet all the averments of a contrary character.

No authorities need be cited in support of the suggestions repeatedly made by plaintiffs that it is the duty of judges to remove even from the minds of the disappointed, if reasonably possible, all imputations of unfairness and partiality. The confidence and respect that the people of a democracy hold for the fairness and impartiality of its judiciary are the most hopeful tokens of national existence. The books are full of helpful admonitions and the judiciary is mindful of them. But, on the other hand, a judge is not to be driven from the performance of judicial duty by vehement and menacing cries of "prejudice and bias" when none in fact exists.

No doubt the moving parties have fully persuaded themselves of the truth of the charges they have made. But because a person may reason himself into a false notion affords no justification for the triumph of wrong over right to the end that he may be relieved from the embarrassment of his folly.

The trial judge has not been shown to be legally disqualified. The propriety of hearing said cause or withdrawing from the trial is a matter for his determination. Whichever way conscience may direct him is beyond the control of this court.

The order appealed from is affirmed.

Richards, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 3, 1921.

All the Justices concurred.